Green J.
delivered the opinion of the court.
The circuit judge, among other things, charged the jury, “that if they believed that the true beginning, was at the white oak and ash, east of Craig’s spring, and to run out the land from that beginning, it would include the land in dispute, and his title is older than plaintiff’s, it would give defendant the best right, unless he is estopped from claiming it, as against the plaintiff, by some act of his. It is insisted for the plaintiff, the defendant is estopped, as against the plaintiff, from setting up his title. Upon this point, the court charged the jury, “if you believe from the proof, the defendant told the plaintiff his claim began at Craig’s spring, and it did not extend further east than the plan represented on the plot by the dotted lines, and the land east of that dotted line was vacant land, and advised plaintiff to enter the land between the black and dotted lines; and was with plaintiff when the entry was made; and if plaintiff did enter the land in pursuance of such advice, and these representations of defendant as to his boundary, he would be estopped; but if when he advised plaintiff to malte his entry, he told plaintiff his land extended to the black line on the map, but verbally agreed to relinquish his claim, or not set it up, he would not be estopped.”
This opinion of the circuit court is objected to by the plaintiff in error, by whom it is insisted, that to make his *407 declarations conclusive upon Mm, is to take away his land , - ' - . , . , by force of an unwritten agreement, which is contrary to the statute of frauds. This consequence, we think, does not result from the opinion of the circuit judge.
In the case of Nichol vs. Lytle, 4th Yer. Rep. 456, referred to by the counsel for the plaintiff in error, the court says: “When there is doubt as to the true locality of a line, the verbal agreement of adjoining claimants, and their¡acts in pursuance thereof fixing upon one, is evidence that the line so agreed upon is the true boundary, especially if long acquiesced in.” The principle here laid down is precisely applicable to the case now before the court. Here, the evidence as to which is the true corner, is contradictory, and must create some uncertainty, although, we might think the weight of testimony was on one side. In this state of things, Barton, the former owner, asserted the corner to be at Craig’s spring, and marked the trees then, as his corner. The plaintiff in error,"who claims under Barton, finding these trees marked as the corner, and purchasing only to that corner, constantly declared that to be his corner, and advised the defendant in error, .to enter the land east of that place. Here is an agree ment between one about to make an entry, and the owner of the adjoining land, fixing upon a comer, and line, (not in a’case where they both well knew it'did not exist, (as was the case of Nichol vs. Lytle,) but in a case, when if the one fixed upon was not the true line and corner, the fact as to the true corner was uncertain, and'believed by them to he at the place fixéd upon. This case is like that of Ross vs. Turner (5 Yer. 338.) There Hopkins, the -'grantee, under whom Turner claimed, met the surveyor to look for the beginning corner of his entry on Ross’ north east corner, but not finding any corner, they fixed upon a plan where they drought it ought to be, and Gray, the sufveyor, marked three hickories as the corner, in Hopkins’ presence, and with his assent. This court held .that Hopkins, and those claiming under him, were *408 estopped to claim any land south-of the three hickories. J , -i 1 although it might appear, that Ross north east corner, on which Hopkins’ grant called to begin, was actually south of said hickories. It is not perceived, how this marking the three hickories could have a more obligatory effect than the marking the white oak and ash, at Craig’s spring, by Barton. In the present case too, the fact that Wilson recognized Barton’s marked trees as his comer, and claimed only to that place, is a circumstance not existing in the case of Ross vs. Turner, and one which adds greatly to the obligatory effect of Barton marking, upon Wilson.
In the case of Singleton vs. Whitesides, (5 Yer. Rep. 18,) the doctrine of estoppel is carried much farther than in the case of Ross vs. Turner, or in the case now at bar. There, Overton and Whitesides were owners of a tract for five thousand acres, granted to John Gray and Thomas Blount, one call of which was, for south to a stake, crossing Duck river. They caused the land to be processioned in 1808, and this line, instead of being run to Duck river, was stopped three hundred and thirty two poles short thereof. After this processioning, Jenkin White-sides repeatedly recognized these .processioning lines as being the true ones; pointed them out to others as his bounds, and conformed in every respect to them for eight or nine years. Whitesides, however, ascertained his mistake,, and set up his claim to the boundaries called for in the grant, and had tenants upon that part lying beyond the processioning lines for years before Cannon’s entry, under which Singleton claimed, was made. Nevertheless, this court held, that he was bound by the processioning lines and his continued claim to them for a series of years, and that he was estopped thereby, to set up his title to the land beyond, although such land was clearly within his grant. This opinion did not proceed upon the idea that the act of the surveyor in processioning and marking the lines, under the act of 1806, chap. 1, sec. 21, was of itself, conclusive upon the .owner of the land, and estopped *409 Him from showing that the surveyor had mistaken his cor- , .. , , , • , , ners and lines, and setting up his claim to his tree boundaries. This it would be impossible to hold, and no such construction has ever been given to that act. But when these processioning lines had been marked, the party recognized them, and claimed to them, and thus made them his own, and thereby was estopped to say they were not his true boundary. The case at bar is much stronger against Wilson, than the one above referred to, was agáinst Whitesides. There Whitesides found out his mistake, and claimed to the true boundary, and had tenants in possession of the land, long before the inception of the adversary claim. Here, the marking was done by the grantee himself, and the corner marked, continued to be claimed by him, and by plaintiff in error, until after the entry of Hudson was made, and the adversary title was acquired by the advice of Wilson. We think, therefore, that in this part of the charge of the court, there is no error.
The plaintiff in error, relied on another defence, in the court below, which is, that as Hudson’s entry included land which the plaintiff in error had under cultivation, the entry and grant of the defendant in error, were void, unless he had given thirty days written notice to the defendant, that he had intended to enter said land. The court charged the jury upon the subject; “that the law required thirty days written notice, but the fact, whether such notice was given, might be proved by positive or circumstantial evidence. If you believe Wilson was present when the entry was made, and admitted notice had been given him, or assented to the entry without notice, it would be a waiver of his right of notice, and would be sufficient.”
It is' insisted that this charge is erroneous, and'that a party in possession of vacant land, cannot waive his right, to written notice, that another intended to enter the land he possesses. This is a most unnatural and strained con *410 struction °^^ie actJ requiring the notice lo be given. All intended was, that the occupant should be apprised of the intention to enter the land, that he might avail himself of the right to secure it to himself, if he might desire to do so. It is not perceived how the written notice would have been of any benefit to Wilson, if it had been given. He was present when the entry was made, assented to tire entry, and advised Hudson to make it. To say that the right to the notice was not waived by these acts and declarations, would be adopting a different rule of construe-lion in this case, from that which has governed in cases analagous to this. This court has constantly held, that a defendant in an execution, who is by the act of 1799, chap. 14, sec. 1, entitled to twenty days written notice of the time and place appointed for the sale of his land, may waive the notice, and that the sale and sheriff’s deed will, in such case, vest a good title in the purchaser. In the case of Noe vs. Purchapile, (5 Yer. Rep. 216,) it is said, “the notice required by the act of assembly, of 1799, chap. 14, sec. 1, was intended for the benefit of the defendant, in an execution, that he might be present and divide the land into different lots, if he should so desire, as provided for by the third section of the act. It would seem, therefore, wholly useless to require proof that a written notice was served upon him, if it clearly appear that he had all the knowledge such notice would communicate, and was actually present at the sale.” After some further decision of the subject, the court concluded by saying: “The defendant, by his conduct, assisted in making the sale, stood by at the time, and had an understanding with the purchaser for his benefit. All this amounts to a waiver of notice.
It is manifest from a comparison of these two acts of assembly, that the same principle is applicable to each, and that the case of Noe vs. Purchapile, is a decision of this question.
*411 The plaintiff in error also insisted on the statute of lim-ilations; hut by reference to the grant of Hudson, it is perceived, that it had not issued seven years before the commencement of this suit. Although, therefore, Wilson had been in possession nine years, yet as the act of limitations does not run against the State, the computation of time can only commence from the inception of“the title of the lessor of the plaintiff. His entry is not produced so that it is not shown that he had any title until'he obtained his grant.
We are, therefore, of opinion, that there is no error in this record, and order the the judgment to be affirmed.
Judgment affirmed.